## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JON BEERMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAUCK, INC. D/B/A TAUCK WORLD DISCOVERY,<br><br>Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

Plaintiff Jon Beermann ("Plaintiff"), by and through his undersigned counsel, brings this lawsuit on behalf of himself and all others similarly situated against Tauck, Inc. d/b/a Tauck World Discovery ("Tauck" or "Defendant"), an operator of world-wide guided tours and cruises ("Tour" or "Tours"). The allegations herein are based upon Plaintiff's personal knowledge as to matters relating to himself and upon information, belief, and the investigation of counsel as to all other matters.

### NATURE OF THE ACTION

1.      Tauck promotes itself, "[a]s a family-owned travel company for 95 years…[whose] value…[and] vision have remained true to [its] founding tenets: always do the right thing, deliver more than what's expected, embrace change by continually innovating."[1]

---

[1] https://www.tauck.com/ (last accessed on May 20, 2020).

2.      Tauck offers an optional Tour insurance product in the form of a Cruise

Protection Product for its cruise tours and a Guest Protection Product for its land-based tours

(collectively the "Protection Plan").

3.      On July 30, 2019, Plaintiff purchased a Tauck 15-night land and cruise Tour of

Japan for his wife and himself.  The Tour was scheduled to begin on April 25, 2020 in Osaka,

Japan and end on May 10, 2020 in Tokyo, Japan.  Mr. Beermann paid a total of $30,913.00 for

the Tour, which included $1,598.00 for Tauck's optional Protection Plan for his wife and

himself.

4.      On March 19, 2020, Tauck unilaterally canceled Plaintiff's Tour. Thereafter,

Tauck subsequently canceled all Tours through July 31, 2020.[2]

5.      Although Plaintiff was able to recover the money he spent for the Tour, Tauck

refuses to refund Plaintiff the $1,598.00 he paid for the Protection Plan.

6.      In lieu of issuing Plaintiff a refund of the $1,598.00 premium, Tauck issued

Plaintiff and all others who had Tours canceled by Tauck a voucher or credit for a future Tauck

Tour.  Tauck refers to this voucher as a "Dreamsaver."

7.      Plaintiff requested a full refund of the premium paid for the Protection Plan.  In

correspondence dated April 22, 2020, Tauck, despite the fact that it, not Plaintiff, unilaterally

canceled the Tour, refused to provide a refund stating, "[t]he Tauck Cruise Protection Plan is

non-refundable under any circumstances.  This has always been, and will continue to be, our

policy.  We are not making any exceptions."[3]

---

[2] https://www.tauck.com/travel-policy-update (last accessed on May 20, 2020).

[3] *See* Exhibit 1, April 22, 2020 email correspondence from Tauck to Plaintiff.

8.      Advising Plaintiff and Class members that Tauck has "always" had a policy that Protection Plan premiums are "non-refundable under any circumstances" is false, misleading and deceptive to Plaintiff and other consumer Class members.

9.      Tauck did not previously disclose that the Protection Plan premium, which became worthless solely as a result of Tauck's actions in canceling its Tours and through no fault of Plaintiff or any Class member, would never be refunded under any circumstances.  Such policy is not written in the Protection Plan and Plaintiff did not agree to it.

10.     Having rendered the Protection Plan insurance worthless Tauck is now seeking to force Plaintiff and Class members to spend a very substantial sum to purchase another Tour to receive any value from a product that Tauck unilaterally rendered valueless for its intended purpose.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which Plaintiff and one or more of the other Class members are citizens of a state different from the Defendant. Namely, Plaintiff is a Florida citizen and Defendant is a Connecticut citizen.

12.     Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Connecticut, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

13.     This Court has personal jurisdiction over Defendant because it resides in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located. Defendant maintains its principal place of business in Wilton, Connecticut and, upon information and belief, events and transactions underlying the claims herein, including Tauck's decision-making regarding its refund policy challenged in this lawsuit, occurred within this judicial District.

15.     Furthermore, Tauck specifies that venue in this Court is proper, vests this Court with jurisdiction and provides for the uniform application of Connecticut law in its online Terms and Conditions[4] as follows:

> These Terms shall be governed in all respects by the laws of the State of Connecticut without giving effect to its conflicts of law provisions. Both parties submit to the personal jurisdiction of and venue in the state and federal courts in the State of Connecticut, in the judicial district where Tauck resides. The parties further agree that any cause of action arising under these Terms shall exclusively be brought in such courts.

### CHOICE OF LAW ALLEGATIONS

16.     The State of Connecticut has sufficient contacts to Class members' claims such that uniform application of Connecticut law to those claims is appropriate.

17.     Tauck is headquartered in Wilton, Connecticut, conducts substantial business in Connecticut, a sizable percentage of the Class is located in Connecticut, and, upon information and belief, all core decisions that gave rise to the claims set forth herein were made in Connecticut.

---

[4] https://www.tauck.com/terms-and-conditions (last accessed on May 20, 2020).

18.     Tauck has selected Connecticut as its chosen law by including the Connecticut choice-of-law provision in its Terms and Conditions. Tauck acquiesces to the application of Connecticut law and expects that Connecticut law will apply to claims brought by its customers.

19.     The State of Connecticut also has a strong regulatory interest in applying its law to all Class members' claims. The Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42-110, *et seq.*, in particular, is designed to preserve a business climate in Connecticut free of unfair and deceptive practices. If Connecticut were only able to address unfair business conduct when the injured consumer resides in Connecticut, that consumer protection law would be largely ineffective in regulating companies that conduct business nationwide. Violators would be able to keep the vast majority of their ill-gotten gains (all those obtained from non-Connecticut consumers), leaving Connecticut-based companies like Tauck undeterred from engaging in similar conduct in the future.

## PARTIES

20.     Plaintiff Jon Beermann is a citizen and resident of Florida who purchased a Protection Plan from Tauck for a Tour that was subsequently canceled by Tauck.  Tauck refuses to refund the premium Mr. Beermann paid for the Protection Plan.

21.     Defendant Tauck, Inc. d/b/a Tauck World Discovery is a privately held corporation headquartered at Wilton Woods, 10 Westport Road, Wilton, Connecticut.

## FACTUAL ALLEGATIONS

22.     Founded in 1925, Tauck prides itself as a "family-owned travel company."[5]

23.     Tauck's estimated annual revenue is between $54-$85 million.[6]

---

[5] https://www.tauck.com/ (last accessed on May 20, 2020).

[6] https://www.dnb.com/business-directory/company-profiles.tauck_inc.f04b32e7b0c956be9e79cf810350cedc.html (last accessed on May 20, 2020);

24.     Tauck has been named to *Travel & Leisure's* "World's Best" list for 22 consecutive years and "creates journeys that are unforgettable, that astonish you with the unexpected while exploring all 7 continents in over 100 destinations and 70+ countries."[7]

25.     In its promotional materials, Tauck emphasizes "getting the best value for your money…what you get for what you spend…and that with Tauck, [guests] get their money's worth and more."[8]

26.     Tauck's "Conditions of Tour" states, Tauck "reserves the right to alter or curtail the itinerary…as it deem[s] necessary. Any savings realized by these changes will be refunded to guests."[9]

27.     Tauck's Protection Plans cost up to $995 per person per Tour.

28.     The Protection Plans are insurance policies that protect the customer by reducing cancellation fees depending on when the cancellation occurs *if the customer* cancels a Tour.

29.     For example, if a customer purchases a Protection Plan and the customer cancels a Tour more than 89 days prior to the beginning of the Tour, the customer forfeits the Protection Plan fee but receives a full refund for the Tour. If the customer cancels a Tour between 89 and 46 days prior to the Tour, the customer receives a 75% refund of the cost of the Tour.  If the customer cancels a Tour between 45 and 1 day prior to the Tour, the customer receives a 50% refund of the cost of the Tour.

---

http://www.buzzfile.com/business/Tauck-World-Discovery-203-899-6500 (last accessed on May 20, 2020).

[7] https://www.tauck.com/ (last accessed on May 20, 2020).

[8] https://www.tauck.com/tauck-difference (last accessed on May 20, 2020).

[9] https://www.tauck.com/tours/land-of-rising-sun-cruise-around-japan (last accessed on May 20, 2020).

30.     Tauck's "policy," as Tauck misleadingly communicated to Plaintiff by email, is to never refund the cost of the Protection Plan.  However, Tauck's "policy" appears nowhere in any of the relevant documents.  There is no written policy regarding refunds of Protection Plan fees when Tauck cancels a Tour. It is apparent that Tauck never had any such policy at all and that Tauck is now refusing to provide refunds to which Plaintiff and the Class are entitled by referring to a policy that never existed. This is deceptive.

31.     Plaintiff's and Class members' Tours were canceled by Tauck as a result of COVID-19. While that is unfortunate, Plaintiff and Class members should not be required to bear the risk of loss in these circumstances.

32.     Plaintiff requested that Tauck refund the premium he paid directly to Tauck for the Protection Plan, but Tauck refused.

33.     Tauck denied Plaintiff's request for a refund of the premium, stating that the Protection Plan was "non-refundable under any circumstances.  This has always been, and will continue to be, our policy.  We are not making any exceptions."  Tauck explained that the Protection Plan was "[j]ust like [a] home, auto, and any other insurance plan."[10]

34.     Tauck rendered the policies worthless by canceling the trips. By refusing to refund Plaintiff and Class members, Tauck enriched themselves. Basically, Tauck opportunistically took advantage of the situation. Instead of refunding all monies paid like it did for the Tours, effectively putting Plaintiff and Class members in the same position as if they had never booked, Tauck took the insurance money and will not return it.

35.     Realizing that it has been unjustly enriched, Tauck has offered Plaintiff and Class members "Dreamsaver" vouchers or credits for future Tauck Tours. By "giving away" these

_____

[10] *See* Exhibit 1.

vouchers, Tauck is forcing Plaintiff to book another Tour in uncertain times (and possibly another Protection Plan). Tauck is changing the economic bargain without Plaintiff's consent. Such decisions, however, should be left to the consumer and not forced on them by Tauck in order to preserve the value of funds the consumer should have been repaid. Plaintiff wants his money back, not a coupon that will only have value at some unspecified date in the future, and only if he spends thousands more on a new Tour.

36.    Tauck is currently offering approximately 130 different Tours between March and June 2021.  Tauck Tours typically include between 24 and 264 passengers.  Based on information and belief that Tauck canceled approximately the same number of Tours due to COVID-19, there are thousands of Tauck customers that purchased Protection Plans that are worthless.

## CLASS ACTION ALLEGATIONS

37.    Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of himself and the Proposed Nationwide Class:[11]

> **Nationwide Class**: All individuals residing in the United States and its territories who purchased, not for resale, Protection Plans from Defendant for Tours that Defendant canceled on or after March 1, 2020.

38.    Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of himself and the proposed Multi-State Consumer Protection Class:

> **Multi-State Consumer Protection Class**: All individuals who purchased, not for resale, Protection Plans from Defendant for Tours that Defendant canceled on or after March 1, 2020 who are residents of the following states and United States territories: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan,

---

[11] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, the Multi-State Consumer Protection Class, and the Florida Class.

Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

39. Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of himself and the proposed Florida Class:

**Florida Class**: All individuals residing in the State of Florida who purchased, not for resale, Protection Plans from Defendant for Tours that Defendant canceled on or after March 1, 2020.

40. Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during this litigation.

41. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are so numerous that the joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes there are at least hundreds if not thousands of individuals who purchased Protection Plans from Defendant only to have their Tour canceled by Defendant.

42. **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** There are numerous questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant engaged in the conduct alleged;

b. Whether Defendant has a policy and/or procedure of denying refunds to Class members for Tours that Defendant canceled;

c. Whether Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

    d.      Whether Defendant converted Plaintiff and Class members' refunds and/or rights to refunds;

    e.      Whether Defendant violated the common law of unjust enrichment;

    f.      Whether Plaintiff and Class members suffered injury as a result of the Defendant's actions, and if so, the extent of monetary damages; and

    g.      Whether injunctive and equitable relief is appropriate.

43.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claim is typical of those of other Class members because Plaintiff purchased a Protection Plan from Defendant that was not refunded when Defendant canceled the trip. Plaintiff's claim is based upon the same legal theories as those of the other Class members. Plaintiff and other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

44.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's interests also do not conflict with the interests of the other Class members who he seeks to represent. Plaintiff's counsel are competent and experienced in litigating class actions, including consumer protection litigation.

45.    **Superiority of Class Action. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no inordinate difficulty in the management of this action as a class action.

46.     All members of the proposed Class are readily ascertainable. Defendant has access to addresses and other contact information for the hundreds or thousands of members of the Class, which can be used for providing notice.

47.     Damages for any individual Class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

48.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Tauck acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

49.     Consistent with applicable case law and constitutional standards, Plaintiff intends to present to the Court at the class certification proceeding, a trial plan and overall proposed method of efficiently presenting to the trier of fact the common law, statutory, and declaratory relief claims presented in this action. For purposes of the complaint, Plaintiff notes that declaratory relief is appropriate for the Nationwide Class and that certain other claims may be grouped together for the trier of fact to resolve. Plaintiff intends to seek to apply the law of the appropriate similar states, with appropriate grouping of certain states with similar laws. Certain states with "unique" issues and with limited number of Class members may not be included in Plaintiff's motion for class certification. Plaintiff believes that the majority of Class members will be able to proceed with trial in this Court on a class wide basis, with the ultimate trial plan requiring information currently in the exclusive possession of Defendant and third parties.

## CLAIMS FOR RELIEF

### COUNT ONE
### CLAIM FOR DECLARATORY AND INJUNCTIVE AND/OR EQUITABLE RELIEF
#### (On Behalf of the Nationwide Class)

50.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

51.    Plaintiff brings this action individually and on behalf of the Nationwide Class.

52.    Plaintiff and Class members have been injured and, unless Defendant's unlawful conduct is enjoined, will continue to be injured in their business and property as a result of Defendant's continuing unlawful conduct.

53.    An actual controversy exists between Defendant and Plaintiff concerning:

a.    Whether Tauck ever informed Plaintiff and Class members or anywhere disclosed that the trip insurance premium would never be refunded in any circumstances;

b.    Whether it is unfair and deceptive for Tauck to keep insurance money when the underlying thing that is being insured was canceled through no fault of Plaintiff and Class members;

c.    Whether Defendant intentionally and actively misrepresented, and is continuing to intentionally and actively misrepresent, to Plaintiff and members of the Class that it maintains a "policy" that Protection Plan premiums are nonrefundable in any circumstances.

54.    Plaintiff requests a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, that Defendant's aforementioned conduct is unlawful as alleged above.

55.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." The declaratory relief sought here does not fall within any of the exemptions set forth in that Act.

56.     Accordingly, Plaintiff prays this Court declare that Tauck is required to stop advising consumers falsely of its "policy" concerning non-refundability of Protection Plan premiums and further disclose to consumers that they are entitled to refunds.

57.     The requested declaratory relief will generate common answers that will resolve controversies that lie at the heart of this litigation and will allow Plaintiff to obtain relief that directly redresses the injury suffered. Resolving these issues in this class action will eliminate the need for continued and repeated litigation.

**COUNT TWO**
**CONVERSION**
**(On Behalf of the Nationwide Class)**

58.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

59.     Plaintiff brings this action individually and on behalf of the Nationwide Class.

60.     Plaintiff and Class members paid for Tauck's Protection Plan in connection with their purchase of Tauck Tours.

61.     Plaintiff and the other members of the Class have an undisputed right to immediate refunds, in lieu of vouchers or future credits, for Protection Plans purchased in connection with trips canceled by Tauck.

62.     Tauck wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting purchasers of canceled trips to apply the amount paid for Protections Plans to the purchase of a future trip. Defendant unlawfully retained the monies Plaintiff and the Class members paid for Protection Plans covering canceled trips.

13

63.    Tauck deprived Plaintiff and the other members of the Class of the value they paid for Protection Plans covering canceled trips, as well as their right to a refund.

64.    Plaintiff and members of the Class have requested and/or demanded that Tauck issue refunds for Protection Plans purchased in connection with trips canceled by Tauck.

65.    This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they purchased Protection Plans that they are prevented from using, and were thereby deprived of the right to their property, in this case, the amounts paid for Protection Plans covering canceled trips.

66.    As a result of Defendant's conversion of the money owed them, Plaintiff and Class members have lost the use of their money during a worldwide public health and economic crisis.

67.    Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for Protection Plans covering trips canceled by Tauck.

**COUNT THREE**
**CIVIL THEFT**
**(On Behalf of the Nationwide Class)**

68.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

69.    Plaintiff brings this action individually and on behalf of the Nationwide Class.

70.    Defendant does business in Connecticut, sells and distributes its Protection Plans in Connecticut, and engaged in deceptive acts and practices in connection with the sale of Protection Plans in Connecticut and elsewhere in the United States.

71.    As alleged herein, Defendant has chosen Connecticut law to govern the claims at issue in this case.

72.     Defendant represented that a Protection Plan protected against the risk of the consumer having to cancel a Tour. Defendants failed to disclose the material fact in connection with its sale of Protection Plans that that the premium was non-refundable in any circumstances, and specifically if Tauck chose to cancel the Tour. This omission was material to Plaintiff's and Class members' decisions to purchase the Protection Plans.

73.     Defendant failed to provide and/or outright refused to provide refunds to Plaintiff and the Class members for Protection Plans they purchased after Defendant canceled their Tours.

74.     Defendant's conduct was an intentional and wanton violation of Plaintiff and the members of the Class' rights and was done in reckless indifference to their rights.

75.     Defendant's wrongful deprivation and retention of Plaintiff and the members of the Class' property constitutes civil theft in violation of Conn. Gen. Stat. § 52-564.

76.     As a direct and proximate result of Defendant's actions, Plaintiff and the members of the Class suffered and continues to suffer damages, and are entitled to treble damages pursuant to Conn. Gen. Stat. § 52-564.

### COUNT FOUR
### VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT
#### (On Behalf of the Nationwide Class)

77.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

78.     Plaintiff brings this action individually and on behalf of the Nationwide Class.

79.     At all relevant times referenced herein, Defendant was a person within the meaning of Conn. Gen. Stat. § 42-110a(3).

80.     Plaintiff and Class members paid for Tauck's Protection Plan in connection with their purchase of Tauck Tours.

81.     Defendant does business in Connecticut, sells and distributes its Protection Plans in Connecticut, and engaged in deceptive acts and practices in connection with the sale of Protection Plans in Connecticut and elsewhere in the United States.

82.     As alleged herein, Defendant has chosen Connecticut law to govern the claims at issue in this case.

83.     In Connecticut, the Unfair Trade Practices Act, §§ 42-110, *et seq*. prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

84.     Defendant, in selling the Protection Plan to Plaintiff and the Class members, was acting in the conduct of its "trade or commerce" as those terms are defined under the Connecticut Unfair Trade Practices Act.

85.     Defendant engaged in unfair and deceptive acts in violation of Conn. Gen. Stat. §§ 42-110, *et seq*. when it failed to disclose that premiums for the Protection Plans were non-refundable in all circumstances, including unilateral Tour cancellations by Tauck.

86.     Defendant only represented that a Protection Plan protected against the risk of purchasing a Tour and the consumer having to cancel. A material omission was that if Tauck cancelled a Tour the purchase of a Protection Plan would not be refunded. Defendant never stated anywhere that the trip insurance premium would never be refunded in any circumstances. It is unfair and deceptive for Tauck to keep insurance money when the underlying thing that is being insured was canceled through no fault of Plaintiff or Class members.

87.     Referring to a "policy" that does not exist, Defendant failed to provide and/or outright refused to provide refunds to Plaintiff and the Class members for Protection Plans they purchased after Defendant unilaterally canceled their Tours.

88.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Connecticut and throughout the United States.

89.     Defendant intended for Plaintiff and all Class members to rely on its deceptive acts.

90.     Defendant's deceptive acts proximately caused actual injury, damage and ascertainable losses to Plaintiff and the Class members.

91.     Plaintiff and Class members would not have purchased Protection Plans but for Defendant's material omissions and misrepresentations as described in this Complaint.

**COUNT FIVE**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(In the Alternative to Count Four)**
**(On Behalf of the Multi-State Consumer Class)**

92.     Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

93.     Plaintiff brings this action individually and on behalf of the Multi-State Consumer Class.

94.     Plaintiff and Class members are consumers who purchased, not for resale, Protection Plan insurance for personal, family and/or household purposes.

95.     Plaintiff and Class members have been injured as a result of Defendant's violations of the state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

96.     Through its conduct, Defendant violated the following state consumer laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices:

The Alabama Deceptive Trade Practice Act, Ala, Code §§ 8-19-1, *et seq.*; the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471, *et seq.*; the Arizona Consumer Fraud Act, A.R.S. § 44-1522, *et seq.*; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, *et seq.*, the California Consumer Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*; the Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*; the Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, *et seq.*; the District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*; the Georgia Uniform Deceptive Trade Practices Act, Ga. Code §§10-1-370, *et seq.*; the Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq.*, and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq.*; the Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq.*, and Idaho Code § 48-603C, *et seq.*; the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, *et seq.*, and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. § 510/2(a)(5), (7) and (12), *et seq.*; the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq.*; the Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, *et seq.*; the Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), *et seq.*; the Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, *et seq.*; the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*; the Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), *et seq.*, and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, *et seq.*; the Maryland Consumer Protection Act, Md. Code Commercial Law, § 13-301(1) and (2)(i), and (iv) and (9)(i), *et seq.*; the Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*; the Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e), (s) and (cc), *et seq.*; the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), *et seq.*, the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat.§ 8.31, subd. 3(a), *et seq.*; the Mississippi Consumer Protection Act, Miss. Code §§ 75-24-1, *et seq.*; the Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020(1), *et seq.*; the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §§ 30-14-101, *et seq.*; the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*; the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann.§ 598.0915(5) and (7), *et seq.*; the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*; the New Jersey Consumer Fraud Act,

N.J. Stat. Ann. § 56:8-2, *et seq.*; the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12- 2(D)(5)(7) and (14) and 57-12-3, *et seq.*; the New York Business Law, N.Y. Gen. Bus. Law § 349(a), *et seq.*; the North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), *et seq.*; the North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*; the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A), (B)(1) and (2), *et seq.*; the Oklahoma Consumer Protection Act, 15 Okl. Stat. Ann. § 753(5),(7) and (20), *et seq.*; the Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*; the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq.*; the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10, *et seq.*; the South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*; the Tennessee Consumer Protection Act, Tenn. Code §§ 47-18-101, *et seq.*; the Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*; the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1) and (2)(a) and (b); the Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*; the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5)(6) and (14), *et seq.*; the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*; the West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*; the Wisconsin Deceptive Trade Practices Act, W.S.A. §100.20(1), *et seq.*; and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq.*

97.     Defendant violated the Multi-State Consumer Class states' unfair and deceptive acts and practices laws when it failed to disclose that premiums for the Protection Plans were non-refundable in all circumstances, including unilateral Tour cancellations by Tauck.

98.     Defendant's omissions and misrepresentations were material to Plaintiff's and Class members' decision to purchase the Protection Plan.

99.     As a direct and proximate result of Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, Plaintiff and Class members have suffered ascertainable losses and injuries, including premiums paid for the Protection Plans.

100.    As a result of Defendant's violations, Defendant was unjustly enriched.

101.    Plaintiff brings this action on behalf of himself and all similarly situated persons for the relief requested and to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Plaintiff, the Class, and the public from Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful practices. Defendant's wrongful conduct has had widespread impact on the public at large.

102.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT SIX**
**VIOLATION OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**
**(In the Alternative to Count Four)**
**(On Behalf of the Florida Class)**

103.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

104.    Plaintiff brings this action individually and on behalf of the Florida Class.

105.    Plaintiff and Class members paid for Tauck's Protection Plan in connection with their purchase of Tauck Tours.

106.    Defendant does business in Florida, sells and distributes their Protection Plans in Florida, and engaged in deceptive acts and practices in connection with the sale of Protection Plans in Florida and elsewhere in the United States.

107.    In Florida, the Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq*. prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

108.    The Protection Plan purchased by Plaintiff and the Class members were "trade or commerce" as those terms are defined under the Florida Deceptive and Unfair Trade Practices Act.

109.    Defendant engaged in unfair and deceptive acts in violation of §§ 501.201, *et seq*. when it failed to disclose that premiums for the Protection Plans were non-refundable in all circumstances, including unilateral Tour cancellations by Tauck.

110.    Defendant represented that a Protection Plan protected against the risk that the consumer would have to cancel a Tour. A material omission was that if Tauck canceled a Tour the purchase of a Protection Plan would not be refunded. Defendant never stated anywhere that the trip insurance premium would never be refunded in any circumstances.  It is unfair and deceptive for Tauck to keep insurance money when the underlying thing that is being insured was canceled through no fault of Plaintiff or Class members.

111.    Defendant failed to provide and/or outright refused to provide refunds to Plaintiff and the Class members for Protection Plans they purchased after Defendant canceled their Tours.

112.    Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Florida and throughout the United States.

113.    Defendant intended for Plaintiff and all Class members to rely on their deceptive acts.

114.    Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class members.

115.    Plaintiff and Class members would not have purchased Protection Plans but for Defendant's material omissions and misrepresentations as described in this Complaint.

## COUNT SEVEN
## NEGLIGENT MISREPRESENTATION
### (On Behalf of the Nationwide Class)

116.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

117.    Plaintiff brings this action individually and on behalf of the Nationwide Class.

118.    Defendant failed to disclose, concealed, suppressed, and omitted material information concerning the Protection Plan at the time of purchase, including Tauck's "policy" that premiums were nonrefundable in all circumstances, and specifically, if Tauck chose to unilaterally cancel the Tour.

119.    Furthermore, in its ongoing communications with its customers, Tauck's continuing reliance and use of a "policy" that appears nowhere in any of the relevant documents to justify its improper retention of policy premiums constitutes a continuing material misrepresentation and omission to Plaintiff and Class members.

120.    Defendant intended that Plaintiff and Class members would rely upon its material misrepresentations and omissions to purchase Protection Plans; and Plaintiff and Class members generally reviewed and reasonably relied upon Defendant's misrepresentations and omissions and incurred damages as a direct and proximate result.

## COUNT EIGHT
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class)

121.    Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

22

122.    Plaintiff brings this action individually and on behalf of the Nationwide Class.

123.    Plaintiff and Class members paid for Tauck's Protection Plan in connection with their purchase of Tauck Tours.

124.    Tauck benefitted from its unlawful acts by receiving payments for the sale of Protection Plans on trips it canceled, though Tauck has no right to deny Plaintiff and Class members refunds of such payments.

125.    Plaintiff and members of the Class conferred upon Defendant a benefit in the form of money for Protection Plans covering specific trips. In paying for such Protection Plans, Plaintiff and members of the Class conferred benefits that were non-gratuitous.

126.    Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

127.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for Protection Plans covering canceled trips. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

128.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and the Class members are entitled to and seek disgorgement and restitution of Defendant's wrongful profits, Protection Plan revenue on trips canceled by Tauck, and benefits in a manner established by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Class, and award the following relief:

A.      An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Class and Plaintiff's counsel as counsel for the Class;

B.      Damages and refunds in the amount of unrefunded monies paid for Protection Plans covering trips canceled by Tauck;

C.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D.      Costs, expenses, and reasonable attorney's fees as permitted by law;

E.      Pre-judgment and post-judgment interest on all sums awarded;

F.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for Protection Plans covering trips canceled by Tauck; and

G.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims in this action.

Dated:  May 21, 2020      Respectfully submitted,

             */s/ Jonathan M. Shapiro*
             Jonathan M. Shapiro (ct24075)
             AETON LAW PARTNERS LLP
             101 Centerpoint Drive, Suite 105
             Middletown, CT 06457
             Tel: 860.724.2160
             jms@aetonlaw.com

             Michael J. Freed (*pro hac vice* forthcoming)
             Robert J. Wozniak, Jr. (*pro hac vice* forthcoming)
             Brian M. Hogan (*pro hac vice* forthcoming)
             FREED KANNER LONDON & MILLEN LLC
             2201 Waukegan Rd, Suite 130
             Bannockburn, IL  60015
             Tel. (224) 632-4500
             mfreed@fklmlaw.com
             rwozniak@fklmlaw.com
             bhogan@fklmlaw.com

             Jonathan M. Jagher (*pro hac vice* forthcoming)
             Kimberly A. Justice (*pro hac vice* forthcoming)
             FREED KANNER LONDON & MILLEN LLC
             923 Fayette St
             Conshohocken, PA  19428
             Tel. (610) 234-6487
             jjagher@fklmlaw.com
             kjustice@fklmlaw.com

             Katrina Carroll (*pro hac vice* forthcoming)
             CARLSON LYNCH, LLP
             111 W. Washington Street, Suite 1240
             Chicago, IL 60602
             Tel. (312) 750-1265
             kcarroll@carlsonlynch.com

             Andrew J. Shamis (*pro hac vice* forthcoming)
             SHAMIS & GENTILE, P.A.
             14 NE 1st Ave., Suite 1205
             Miami, FL 33132
             Tel. (305) 479-2299
             ashamis@shamisgentile.com

R. Alexander Saveri (*pro hac vice* forthcoming)
Cadio Zirpoli (*pro hac vice* forthcoming)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Tel.: (415) 217-6810
rick@saveri.com
cadio@saveri.com

*Counsel for Plaintiff and the Proposed Class*