## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JON BEERMANN, individually and on
behalf of all others similarly situated,
    *Plaintiff*,

    v.

TAUCK, INC. D/B/A TAUCK WORLD
DISCOVERY,
    *Defendant*.

No. 3:20-cv-00713 (JAM)

## ORDER GRANTING MOTION TO DISMISS

The plaintiff Jon Beermann wanted a travel adventure to Japan. And so he booked a trip for him and his wife with the defendant Tauck, Inc. d/b/a Tauck World Discovery, an international travel tour company.

Beermann booked the trip in July 2019 at which time he paid Tauck more than $29,000 for a tour that was set to start in April 2020. For an added fee of $1,598, Beermann also paid Tauck for a "protection plan" that would allow him a refund if he decided to cancel his plans.

But then the COVID-19 pandemic broke out, and Tauck cancelled the Japan tour in March 2020. Tauck refunded Beermann the more than $29,000 that he had paid for the tour. Tauck, however, declined to refund the $1,598 that Beermann had paid for the protection plan.

Beermann has now filed this class action lawsuit on behalf of himself and other Tauck customers nationwide whose tours were cancelled but who were denied refunds of the fees they paid for a protection plan. He primarily claims that Tauck's refusal to refund the fees paid for a protection plan violates the Connecticut Unfair Trade Practices Act (CUTPA). I do not agree. I conclude that Beermann has not plausibly alleged any deceptive or unfair act under the circumstances presented here. Accordingly, for these and other stated reasons, I will grant Tauck's motion to dismiss.

1

BACKGROUND

The plaintiff Jon Beermann is a citizen of Florida. He has filed this putative class action complaint against defendant Tauck, Inc. d/b/a Tauck World Discovery, a company that is based in Connecticut and that operates world-wide guided tours and cruises.[1]

On July 30, 2019, Beermann purchased from Tauck a 15-night tour of Japan for himself and his wife.[2] He paid a total of $30,913 for the tour, and this total price included $1,598 for an optional "protection plan."[3]

According to the complaint, Tauck's protection plans "are insurance policies that protect the customer by reducing cancellation fees depending on when the cancellation occurs *if the customer* cancels a tour."[4] Thus, for example, a protection plan would afford a customer a 100% refund if the customer cancelled a tour reservation 90 days or more before the tour begins but only a 50% refund if the customer cancelled a tour reservation within 45 days before the tour begins.[5] The refund would be for the customer's tour payments (here, more than $29,000) but not for the fee or premium paid by the customer for the protection plan (here, $1,598).[6]

Beermann's tour was scheduled to start on April 25, 2020.[7] But because of the emerging COVID-19 pandemic, Tauck cancelled Beermann's tour on March 19, 2020, as well as all of its tours that were scheduled to take place through July 31, 2020.[8]

Tauck refunded the cost of the tour for both Beermann and his wife, as well as for all customers whose tours were cancelled as a result of the pandemic.[9] But Tauck did not refund the

---

[1] Doc. #1 at 2, 4 (¶¶ 6, 17).
[2] *Id.* at 2 (¶ 3).
[3] *Ibid.*
[4] *Id.* at 6 (¶ 28) (emphasis in original).
[5] *Id.* at 6 (¶ 29). A customer cancelling between 46 days and 89 days before a tour would receive a 75% refund. *Ibid.*
[6] *Ibid.*
[7] *Id.* at 2 (¶ 3).
[8] *Id.* at 2 (¶ 4).
[9] *Id.* at 2 (¶ 5).

$1,598 that Beermann had paid for the protection plan.[10] Rather than refund this amount, Tauck

instead issued a credit or voucher in the same amount toward the cost of a future Tauck tour.[11]

Beermann requested a full refund of what he had paid for the protection plan.[12] But

Tauck declined the request, stating that "[t]he Tauck Cruise Protection Plan is non-refundable

under any circumstances. This has always been, and will continue to be, our policy. We are not

making any exceptions."[13] Tauck also told Beermann that his protection plan had been in force

since he had purchased the tour in July 2019 and that "[j]ust like [a] home, auto, and any other

insurance plan, it does not become refundable because a claim has not been filed."[14]

Beermann has filed this class action on behalf of himself and other Tauck customers who

had their tours cancelled as a result of the COVID-19 pandemic but who were not refunded the

amounts they paid for protection plans.[15] Beermann asserts that Tauck did not previously

disclose that the protection plan premiums were non-refundable and would not be refunded

under any circumstances.[16] Beermann also asserts that this no-refund policy was not written in

the protection plan documents and that he did not agree to it.[17]

The complaint alleges multiple claims. Count One alleges a claim for declaratory relief

under the Declaratory Judgment Act. Count Two alleges a claim for conversion. Count Three

alleges a claim for civil theft. Count Four alleges a claim for violation of the Connecticut Unfair

Trade Practices Act (CUTPA). Count Five alleges as an alternative to the CUTPA claim a

violation of the unfair trade practice statutes of all of the States other than Connecticut and

---

[10] *Ibid.*
[11] *Id.* at 2 (¶ 6).
[12] *Id.* at 2 (¶ 7); Doc. #1-1.
[13] Doc. #1 at 7 (¶ 33); Doc. #1-1.
[14] Doc. #1-1.
[15] Doc. #1 at 8 (¶ 37).
[16] *Id.* at 3 (¶ 9).
[17] *Ibid.*

Florida. Count Six alleges as an alternative to the CUTPA claim a violation of the Florida

Deceptive and Unfair Trade Practices Act. Count Seven alleges a claim for negligent

misrepresentation. Lastly, Count Eight alleges a claim for unjust enrichment. Tauck now moves

to dismiss the complaint in its entirety.[18]

### DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), I must accept as true all

factual matters alleged in a complaint, although a complaint may not survive unless it recites

enough non-conclusory facts to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A court is

"not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as

true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

Further, I may consider any documents attached as exhibits to, incorporated by reference in, or

that are otherwise integral to the complaint. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88

(2d Cir. 2018).[19]

### *Count One - Declaratory Judgment Act*

Count One alleges a claim for a declaratory judgment pursuant to Fed. R. Civ. P. 57 and

the Declaratory Judgment Act, 28 U.S.C. § 2201. Beermann requests that "this Court declare that

Tauck is required to stop advising consumers falsely of its 'policy' concerning non-refundability

of Protection Plan premiums and further disclose to consumers that they are entitled to

refunds."[20]

---

[18] Doc. #32.
[19] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[20] Doc. #1 at 13 (¶ 56).

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). For the purposes of the Declaratory Judgment Act, an "actual controversy" requires that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

Although the Declaratory Judgment Act allows a court to declare the legal rights of the parties, a court's authority to do so "does not extend to the declaration of rights that do not exist under law," and therefore a declaratory judgment must "rel[y] on a valid legal predicate." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). Because as I explain below, Beermann has failed to allege plausible grounds for relief as to any of his substantive claims, I will dismiss his claim for declaratory relief under the Declaratory Judgment Act as alleged in Count One.

### *Count Two - Conversion*

Count Two alleges a common law claim for conversion. Under Connecticut law (which the parties do not dispute applies to all the claims in this action), a conversion occurs "when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 770 (2006). "The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." *Ibid.*

Thus, "an action for conversion of funds may not be maintained to satisfy a mere obligation to pay money," because instead "it must be shown that the money claimed, or its equivalent, *at all times* belonged to the plaintiff and that the defendant converted it to his own use." *Id.* at 772 (emphasis added). In other words, "a claim for conversion may be brought when the relationship is one of bailor and bailee but not when it is one of debtor and creditor." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 419 (2007).

For his conversion claim, Beermann alleges that Tauck and other class members "paid for Tauck's Protection Plan in connection with their purchase of Tauck Tours" and that he and the other class members "have an undisputed right to immediate refunds, in lieu of vouchers or future credits, for Protection Plans purchased in connection with trips canceled by Tauck."[21] Neither these allegations nor any other allegations in the complaint suggest that the refunds sought are of monies that *at all times* belonged to Beermann or other plaintiffs. To the contrary, the monies once paid to Tauck belonged to Tauck and only later were allegedly subject to refund upon the occurrence of a future event (the cancellation of the tour).

Because Beermann at best alleges a debtor-creditor dispute about a mere obligation to pay money (a refund), he has not alleged facts to plausibly support a conversion claim. *See, e.g., Metzner v. Quinnipiac Univ.*, 2021 WL 1146922, at *12 (D. Conn. 2021) (failure to refund tuition payment was not a conversion under Connecticut law); *Cherry Hill Const. Inc. v. E.F.S. Mach., LLC*, 2015 WL 3975711, at *4 (Conn. Super. Ct. 2015) (failure to refund deposit for the purchase of a specific piece of construction equipment was not a conversion under Connecticut law). Accordingly, I will dismiss Beermann's claim for conversion as alleged in Count Two.

---

[21] Doc. #1 at 13 (¶¶ 60-61).

### *Count Three - Civil Theft*

Count Three alleges a claim for civil or statutory theft in violation of Conn. Gen. Stat. § 52–564. "The elements of civil theft are largely the same as the elements to prove the tort of conversion, but theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." *Vossbrinck v. Eckert Seamans Cherin, and Mellott, LLC*, 301 F. Supp. 3d 381, 391 (D. Conn. 2018) (citing *Sullivan v. Delisa*, 101 Conn. App. 605, 620 (2007)).

Because as discussed above, Beermann has not alleged facts to support a plausible claim for conversion, he has therefore not alleged a plausible claim for civil theft. Accordingly, I will dismiss Beermann's claim for civil or statutory theft as alleged in Count Three.

### *Count Four - CUTPA*

Count Four alleges a claim under the Connecticut Unfair Trade Practices Act (CUTPA). This statute prohibits in relevant part any "unfair or deceptive acts or practices in the conduct of any trade or commerce," and it allows for a private cause of action by "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice" that is unfair or deceptive. Conn. Gen. Stat. §§ 42–110b, 42–110g.

Whether an act or practice is deceptive or unfair for purposes of a CUTPA claim is often a question of fact that may not be readily susceptible to resolution by way of a pleadings-stage motion to dismiss. *See, e.g.*, *Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015). But when evaluating a motion to dismiss, a court must decide if the facts as alleged are enough to plausibly show that a defendant has engaged in a business act or practice that—as a matter of law—can be characterized as either "deceptive" or "unfair" and that has

caused the plaintiff to suffer an ascertainable loss. *See, e.g.*, *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 101 (D. Conn.) (noting that court may decide CUTPA claim "as a matter of law if it is clear that no reasonable person would be deceived by defendant's conduct"), *aff'd*, 666 F. App'x 84 (2d Cir. 2016).

I will start with whether the complaint alleges facts to plausibly suggest that Tauck engaged in a *deceptive* act under CUTPA. "An act or practice is deceptive if three requirements are met. First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct." *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 800 (2019).

Here, the complaint primarily relies on a theory of deception by omission: that Tauck "failed to disclose that premiums for the Protection Plans were non-refundable in all circumstances, including unilateral Tour cancellations by Tauck."[22] Although CUTPA allows for a deception claim to be based on an omission, "in Connecticut, a failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 (2d Cir. 2013). In my view, Beermann has not alleged facts to plausibly suggest that there was any duty to disclose.

To begin, Beermann does not point to any law or regulation that requires a travel tour operator to disclose its non-refund policy with respect to protection plan fees. *Cf. FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 316 (S.D.N.Y. 2008) (discussing federal regulatory requirement for telemarketers to disclose a seller's no-refund policy).

---

[22] Doc. #1 at 16 (¶ 85).

Instead, Beermann argues that the nature of the parties' relationship gave rise to a duty to

disclose, because Tauck acted as Beermann's travel agent and assumed a fiduciary duty to act in

Beermann's best interest. Beermann relies on the Second Circuit's decision in *Johnson v.*

*Priceline*, a case in which the court of appeals examined a plaintiff's claim of a fiduciary duty of

disclosure under Connecticut law in connection with an alleged travel agent relationship. The

Second Circuit noted authority "identifying factors relevant to travel agent status, including that

[a] service provider 'deals with carriers, plans an itinerary, arranges for hotel accommodations,

guides and tours of each city and sets up the traveler's schedule.'" *Johnson*, 711 F.3d at 277

(quoting *United Airlines, Inc. v. Lerner*, 87 Ill. App. 3d 801, 803 (1980)). The Second Circuit in

*Johnson* acknowledged precedent suggesting that a travel agent relationship may create a

fiduciary duty of disclosure but concluded that the defendant before it—Priceline.com—did not

have a travel agent relationship with the customer plaintiffs who used its services to book hotel

reservations. *Id.* at 276-80.

Like the Second Circuit in *Johnson v. Priceline*, I need not resolve the general question

of whether a travel agent relationship creates a fiduciary relationship for all purposes with the

travel agent's customer, because the facts as alleged here do not show that there was such a

relationship with respect to Tauck's sale to Beermann of its protection plan. The cases that

discuss a special duty of disclosure for travel agents arise in the context of a travel agent's

dealings with third parties on the customer's behalf and the agent's disclosure of hazards with

respect to the customer's travel logistics and arrangements.[23] Even assuming that an agent bears

---

[23] *See, e.g.*, *Cicchiello v. Reney Plane Broker, Inc.*, 1996 WL 278348, at *3 (Conn. Super. Ct. 1996) (recognizing travel agent's potential duty of disclosure with respect to dangerous resort accommodation); *Douglas v. Steele*, 816 P.2d 586, 589 (Ok. Ct. App. 1991) (recognizing travel agent's duty of disclosure with respect to Hawaiian tour operator who travel agent had reason to believe was bankrupt); *but see Lerner*, 87 Ill. App. 3d at 803 (no duty of travel agent to disclose road closure that could affect customer travel plans because "[t]he law requires only that agents be loyal, not prescient" and that "United was not required to tell Lerner of possible hindrances to his vacation"); *see also Manes v. Coats*, 941 P.2d 120, 124 n.2 (Alaska 1997) (citing conflicting case authority about

a fiduciary duty in this agency context of trip planning, Beermann does not point to precedent

holding that a fiduciary relationship attaches to a tour company's sale to a customer of an

insurance-like travel protection plan.

Indeed, this aspect of the parties' dealings—the purchase of a travel insurance policy—

was an ordinary contractual insurance transaction not imbued with a fiduciary character.

Although "jurisdictions are split on the issue of whether an insurer owes a fiduciary duty to its

insured," the Connecticut Supreme Court has "characterized the relationship between the insurer

and insured as 'commercial,' at least in the context of purchasing a policy." *Macomber v.*

*Travelers Prop. & Cas. Corp.,* 261 Conn. 620, 641 (2002) (citing *Harlach v. Metropolitan*

*Property & Liability Ins. Co*., 221 Conn. 185, 190 (1992)). "Connecticut courts have consistently

held that no fiduciary duty arises when an insurer sells a policy to an insured."

*Nw. Mut. Life Ins. Co. v. Gil*, 2009 WL 276086, at \*6 (D. Conn.), *aff'd*, 351 F. App'x 515 (2d

Cir. 2009).

As the Connecticut Supreme Court has more recently explained, "not all business

relationships implicate the duty of a fiduciary," and "the mere fact that one business person trusts

another and relies on the person to perform his obligations does not rise to the level of a

confidential relationship for purposes of establishing a fiduciary duty." *Essex Ins. Co. v. William*

*Kramer & Assocs., LLC*, 331 Conn. 493, 508 (2019). Instead, "[t]he unique element that gives

rise to a fiduciary duty [is] the risk that the other party could be taken advantage of as a result of

one party's access to, or influence regarding, another party's moneys, property, or other valuable

resources." *Id.* at 512. Moreover, even assuming that a party acts as another party's fidiciary for

some purposes, "it is an open question as to whether every act undertaken by one's agent

---

disclosure duties of travel agents with respect to travel arrangements).

implicates fiduciary duties." *Id.* at 542 n.8.

For these reasons, the law does not weigh in Beermann's favor for his claim of a

fiduciary relationship with respect to Tauck's sale to him of a protection plan. Beermann does

not otherwise cite authority holding that a travel agent or tour operator has a general duty to

disclose its refund policy with respect to any payments received from customers. Businesses

commonly sell goods and services to consumers without necessarily telling them upfront what all

their refund options may be. Although a buyer no doubt will be disappointed to learn that a

refund is not forthcoming, the fact that the buyer has not been told from the start whether the

buyer's payments are refundable does not suggest that the buyer has been duped or misled as

must be shown for an act to be deceptive under CUTPA.

This case thus differs from *Freeman v. A Better Way Wholesale Autos, Inc.*, 174 Conn.

App. 649 (2017), in which the Connecticut Appellate Court affirmed CUTPA liability against a

defendant who "provided a misleading assurance regarding the availability of a refund of the

deposit to induce the plaintiff to pay the deposit." *Id.* at 665. Here, by contrast, there is no

allegation of any misleading assurance with respect to the availability of a refund.[24]

Absent some underlying duty either to disclose its refund policy or to actually pay a

refund, Tauck cannot be held liable under CUTPA. In a similar context of plaintiffs who claimed

that a business violated CUTPA by failing to pay refunds, the Second Circuit has ruled that

---

[24] The complaint recites a clause in Tauck's "Conditions of Tour" which states that Tauck "reserves the right to alter or curtail the itinerary … as it deem[s] necessary" and that "[a]ny savings realized by these changes will be refunded to guests." Doc. #1 at 6 (¶ 26). Beermann does not argue in his papers that this was a misleading assurance, and I conclude that it was not. Even assuming that this refund clause applies to an outright cancellation of a tour (as distinct from "alter[ing] or curtail[ing] the itinerary"), when Tauck cancelled Beermann's tour, it refunded all the money he had paid for the tour (apart from what he paid for the protection plan). This refund was surely all the operational "savings" that Tauck "realized" from its cancellation of the tour. The additional funds that Tauck received from Beermann for the protection plan cannot be plausibly characterized as "savings" that were "realized" by Tauck as a result of its cancellation of the tour because Tauck ended up paying 100% of the refund that would have been paid to any customer who paid for a protection plan and then cancelled their reservation for a tour.

11

"[t]he fact that some plaintiffs were offered less than a full refund to which they would not have

been entitled at law cannot constitute an 'unfair or deceptive' act." *Williams v. Affinion Group,*

*LLC*, 889 F.3d 116, 126 (2d Cir. 2018).

Beermann also argues that it was deceptive for Tauck to tell him *after* he made a demand

for refund of the protection plan that Tauck had always had a "policy" of no refunds of the

protection plan when in fact Tauck allegedly had no such established policy.[25] But even so, the

loss claimed by Beermann is the fact of the denial of a refund. Any after-the-fact

misrepresentation by Tauck about why it denied him a refund did not cause the loss claimed by

Beermann (no refund) and therefore cannot serve as the predicate for a CUTPA claim. *See*

*Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 318 Conn. 847, 882 (2015) (describing

CUTPA's requirement that "the prohibited act was the proximate cause of a harm to the

plaintiff"). In short, therefore, the complaint does not allege facts to plausibly establish that

Tauck engaged in a deceptive act that caused an ascertainable loss as required for a CUTPA

claim.

Nor does the complaint allege facts to plausibly show that Tauck engaged in an *unfair*

business act or practice under CUTPA. To determine whether an act or practice is unfair under

CUTPA, courts look to the following three factors: first, "whether the practice, without

necessarily having been previously considered unlawful, offends public policy as it has been

established by statutes, the common law, or otherwise—in other words, it is within at least the

penumbra of some common law, statutory, or other established concept of unfairness"; second,

"whether it is immoral, unethical, oppressive, or unscrupulous"; or third, "whether it causes

substantial injury to consumers." *Kent Literary Club of Wesleyan Univ. at Middletown v.*

---

[25] Doc. #39 at 19.

*Wesleyan Univ.*, -- A. 3d --, 2021 WL 851007 (Conn. 2021).

As to the first factor, Beermann does not point to any statute, common law rule, or other pre-existing legal duty for Tauck to have refunded the protection plan payments upon its cancellation of the tour. The first factor provides no grounds to conclude that Tauck acted unfairly within the meaning of CUTPA.

Nor does the second factor weigh in Tauck's favor because the facts do not plausibly suggest—as CUTPA requires—that it was no less than immoral, unethical, oppressive, or unscrupulous for Tauck not to refund the protection plan payment under the circumstances presented here. To the contrary, as the complaint itself alleges, the protection plan was akin to an insurance policy. It is well accepted that an insurance policy holder is not entitled to the refund of his insurance premium payments just because he did not end up making a claim on the insurance policy. Likewise, a business that issues a protection plan accompanying the sale of its goods or services does not commit an unfair business act because it declines to issue a refund of the fee for a protection plan for any customer who does not end up making a claim for benefits under the plan. As the Second Circuit has ruled, the failure of a business to pay refunds to its customers does not constitute an unfair or deceptive act under CUTPA absent a showing by the customers that they were "entitled at law" to payment of such refunds. *Williams*, 889 F.3d at 126.

Still, however, Beermann complains that Tauck's cancellation of the tour rendered his protection plan "worthless."[26] But that is not so for at least two reasons.

First, Beermann had the benefit of having the protection plan in place for about eight months from July 2019 to March 2020 when Tauck cancelled the tour. "In general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and

---

[26] Doc. #39 at 30.

security in the event of an accident or other catastrophe." *Title Indus. Assurance Co., R.R.G. v.*

*First Am. Title Ins. Co.*, 853 F.3d 876, 892 (7th Cir. 2017) (quoting *Cates Construction, Inc. v.*

*Talbot Partners*, 21 Cal. 4th 28, 44 (1999)). For the eight months before Tauck cancelled the

tour, Beermann had the peace-of-mind benefit of having the protection plan in place, and Tauck

was on the hook to honor the plan if Beermann had exercised his cancellation rights under the

plan.

Second, when Tauck ended up cancelling the tour (with only about a month left before

the tour was to start), Tauck refunded to Beermann his tour payments (all the money he had paid

Tauck except the money he paid for the protection plan). Beermann ended up receiving the same

type of benefit—a refund of his tour payments—that he was due to receive if he himself had

sensibly chosen in light of the oncoming COVID-19 pandemic to exercise his rights of

cancellation under the protection plan. Indeed, he received a windfall, because he received a

refund for 100% of his tour payments rather than a refund of only 50% of his tour payments,

which is the amount he would have been due under the protection plan if he had cancelled on the

same date—March 19, 2020—when Tauck cancelled the entire tour.

Thus, Tauck's cancellation of the tour did not render the protection plan worthless as

Beermann claims. Beermann had the benefit of the plan for eight of the nine months between

when he bought the plan and when the tour was scheduled to start. And Beermann ended up

receiving more in benefits than he stood to be awarded if he himself had made a claim in the last

remaining month of his protection plan.

Beermann's real complaint is that he bought an insurance policy to protect against one

cause of loss (his cancellation of his tour reservation) but that because he suffered the same loss

for another causal reason (Tauck's cancellation of the tour), he should receive a refund for the

14

premium he paid for an insurance policy that ultimately proved unnecessary. This complaint does not state a plausible claim of unfairness because it ignores that Tauck ended up refunding to Beermann what he paid for the tour.

Suppose, for example, that a homeowner buys a fire insurance policy and decides to pay an extra premium for a flood insurance rider. If the house burns down and the insurance company pays for a new house, no principle of fairness demands that the homeowner additionally receive a refund for the extra flood insurance premium simply because it was a fire—rather than a flood—that destroyed the house.

The same reasoning applies here. Beermann could not go on the tour he bought and paid for. But he received a full refund of what he paid for the tour. The fact that the *reason* he could not go on the tour was Tauck's decision to cancel the tour rather than his own decision to opt out of the tour does not change the fact that Beermann ended up receiving all the money back that he paid for the tour. In essence, consistent with the insurance analogy that Beermann himself espouses, he received full payment for his loss and is not additionally entitled to a refund of his protection plan insurance premium as well.

Beermann might resist the fire/flood insurance example on the ground that the outcome should be different if it was the insurance company itself that burned the house down, and he argues that here it was Tauck who was responsible for the loss because it cancelled the tour. But if the focus of Beermann's argument about unfairness is on Tauck's culpability for cancelling the tour, then this simply underscores another reason why he has not plausibly alleged an unfair business act within the scope of CUTPA. That is because Beermann cannot legitimately contest that Tauck had good reason to cancel the tour. The COVID-19 pandemic swept the planet in early 2020, and no one can say it was unreasonable (much less an "unfair" business act) for a

global tour company in March 2020 to cancel its tours in the face of worldwide travel restrictions

and the onset of a highly communicable and lethal disease that has since caused millions of

people to die.

Tauck has not alleged facts that plausibly show unfairness. I have no occasion to consider

whether it could ever amount to an unfair business act for a tour company to charge a fee for a

protection plan but then cancel the tour and decline to refund the premium for the protection

plan. I can think of law school hypotheticals that might allow a claim to survive. What if a tour

company accepted a premium for a protection plan while knowing that it would cancel the travel

tour? What if a tour company accepted a premium for a protection plan and then cancelled the

tour the very next day? These extreme facts are not those alleged here.

Lastly, Tauck has not plausibly alleged facts to show any substantial injury to consumers,

which is the third factor courts consider when evaluating CUTPA unfairness claims. Because

Beermann had the benefit of eight months under the protection plan and eventually received a

100% refund for his actual tour costs (which is the most he would have been entitled to at any

time under the protection plan), there was no substantial injury. *See A-G Foods, Inc. v.*

*Pepperidge Farm, Inc.*, 216 Conn. 200, 217 (1990) (noting that an "*unjustified consumer injury*

[is] a necessary predicate for recovery under CUTPA").

All in all, Beermann has not alleged facts to plausibly support a claim of a deceptive or

unfair business act or practice by Tauck that has caused Beermann any ascertainable loss.

Accordingly, I will dismiss Beermann's CUTPA claim as alleged in Count Four.[27]

---

[27] In light of my dismissal of Beermann's CUTPA claim for failure to state plausible grounds for relief under CUTPA, I need not address Tauck's arguments that Beermann—as a citizen of Florida—is not a proper class representative. Moreover, because of the lack of plausible allegations of unfairness, there can be no "substantial injury" to consumers within the scope of CUTPA.

*Counts Five and Six - Multi-State Consumer Protection Laws*

Counts Five and Six allege violations of the unfair trade practices acts of Florida and all

States other than Connecticut. But, as Beermann acknowledges, these consumer protection laws

of other States are not materially different from CUTPA.[28]  "[C]ourts sitting in diversity may

properly rely on the forum state's law where neither party asserts that another jurisdiction's law

meaningfully differs." *Johnson*, 711 F.3d at 276 n.2. Accordingly, because Beermann has failed

to allege plausible grounds for relief under CUTPA and because he does not point to any

meaningful difference in the standards applied by the consumer protection laws of other States, I

will grant Tauck's motion to dismiss the multi-state unfair trade practice act claims as alleged in

Counts Five and Six.[29]

*Count Seven - Negligent Misrepresentation*

Count Seven alleges a claim for negligent misrepresentation. An action for negligent

misrepresentation "requires the plaintiff to establish (1) that the defendant made a

misrepresentation of fact (2) that the defendant knew or should have known was false, and (3)

that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a

result." *Office Furniture Rental Alliance, LLC v. Liberty Mut. Fire Ins. Co.*, 981 F. Supp. 2d 111,

120 (D. Conn. 2013).

A claim for negligent misrepresentation may be based on an omission but "only if the

defendant had a duty to disclose the omitted information." *Ibid.* "The duty to disclose correct

information arises from a closer degree of trust and reliance than in the ordinary business

relationship. Accordingly, a claim for negligent misrepresentation can only stand when there is a

---

[28] Doc. #39 at 26.

[29] In light of my dismissal of the multi-state consumer protection act claims for failure to state plausible grounds for relief, I need not address the choice-of-law issues presented by the parties in their briefing.

special relationship of trust and confidence which creates a duty for one party to impart correct information to another." *Ibid.*

Beermann alleges that Tauck engaged in a negligent misrepresentation because it "failed to disclose, concealed, suppressed, and omitted material information concerning the Protection Plan at the time of purchase, including Tauck's 'policy' that premiums were nonrefundable in all circumstances, and specifically, if Tauck chose to unilaterally cancel the Tour."[30] Beermann further alleges that "in its ongoing communications with its customers, Tauck's continuing reliance and use of a 'policy' that appears nowhere in any of the relevant documents to justify its improper retention of policy premiums constitutes a continuing material misrepresentation and omission to Plaintiff and Class members."[31]

These are the same allegations advanced to support Beermann's CUTPA claim, and I conclude for the reasons discussed above that Tauck did not have a duty to disclose that the protection plan fee would not be refunded if Tauck cancelled the tour. Similarly, I conclude that any post-denial-of-refund misrepresentation by Tauck about whether it had a pre-existing "policy" not to refund protection plan fees did not cause any loss to Beermann. Accordingly, I will grant Tauck's motion to dismiss the negligent misrepresentation claim as alleged in Count Seven.

### Count Eight - Unjust Enrichment

Count Eight alleges a claim for unjust enrichment. Unjust enrichment is a "broad and flexible remedy" by which a plaintiff may seek to recover a benefit that the defendant received unjustly and for which "no remedy is available by an action on the contract." *Town of New*

---

[30] Doc. #1 at 22 (¶ 118).

[31] *Id.* at 22 (¶ 119).

*Hartford v. Conn. Res. Rec. Auth.*, 970 A.2d 592, 609 (Conn. 2009). A plaintiff must prove three elements to sustain an unjust enrichment claim: first, that the defendant was benefited; second, that the defendant unjustly failed to pay the plaintiff for the benefit; and third, that the failure to pay was to the plaintiff's detriment. *Ibid.*

Simply the fact that a refund has not been issued to a customer upon request does not mean that the refund has been unjustly denied. As Judge Bryant has observed, a "failure to provide a refund establishes that a conferred benefit has been retained, but does not establish that benefit has been retained unjustly" and that "[m]ost consumers are not legally entitled to the refunds they are provided *gratis* as a goodwill measure." *In re Trilegiant Corp.*, 2016 WL 8114194, at *13 (D. Conn.), *aff'd sub nom. Williams v. Affinion Group*, 889 F.3d 116 (2d Cir. 2018).

The same reasons that I have discussed above with respect to Beermann's CUTPA claim show that there is no plausible merit to his claim for unjust enrichment. Beermann does not suggest that Tauck had an unjust or unfair reason for cancelling the tour, and Beermann ultimately received a larger refund from Tauck's cancellation of the tour than he would have received had he exercised his right on the same date to cancel his participation in the tour under the terms of the protection plan. Alas, in light of the onset of the COVID-19 pandemic, there is little reason to believe he would not have inevitably cancelled his reservation if Tauck had not acted first to cancel the tour. Accordingly, the facts do not plausibly establish that Tauck was unjustly enriched, and I will dismiss Tauck's claim for unjust enrichment as alleged in Count Eight.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss (Doc. #32).

The Clerk of Court shall close this case. If Beermann believes there are grounds to file an

amended complaint that overcomes the concerns stated in this ruling, then he may file a motion

to re-open along with an amended complaint within 30 days of this order.

It is so ordered.

Dated at New Haven this 25th day of August 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge